The **BOARD OF REGENTS OF the UNIVERSITY OF OKLAHOMA** and the **University of Georgia Athletic Association, Plaintiffs,**

v.

**NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, Defendant.**

Civ. No. 81–1209–BU.

United States District Court, W.D. Oklahoma.

Oct. 31, 1984.

Andy Coats, Clyde A. Muchmore, Oklahoma City, Okl., Stanley M. Ward, Norman, Okl., for plaintiffs.

Robert H. Harry, Denver, Colo., James D. Fellers, Oklahoma City, Okl., Richard K. Andrews, George H. Gangwere, Kansas City, Mo., for defendant.

## MEMORANDUM OPINION

BURCIAGA, District Judge, Sitting by Designation.

THIS COURT previously has dealt with the issue of the legality of the controls exercised by the National Collegiate Athletic Association ["NCAA"] over the televising of college football games. *Board of Regents v. National Collegiate Athletic Association,* 546 F.Supp. 1276 (W.D.Okla. 1982). Having made its findings of fact and conclusions of law, the Court entered its Declaratory Judgment and Permanent Injunction decreeing, *inter alia,* the following:

(1) The right to telecast college football games is the property of the institutions participating in the games, and that right may be sold or assigned by those institutions to any entity at their discretion;

(2) The contracts for the televising of college football for the 1982–1985 seasons between National Collegiate Athletic Association and American Broadcasting Companies, Columbia Broadcast System and Turner Broadcast System violate §§ 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1–2, and are therefore void and of no effect;

(3) National Collegiate Athletic Association, its officers, agents and employees, shall be and hereby are enjoined from enforcing or attempting to enforce the provisions of the contracts above described and from making any other contract of similar kind or nature in the future;

(4) National Collegiate Athletic Association, its officers, agents and employees, shall be and hereby are enjoined from prohibiting member institutions from selling or assigning their rights to telecast the college football games in which they participate, and from requiring as a condition of membership that those institutions grant to National Collegiate Athletic Association the power to control those institutions' rights to telecast college football games;

The Court further declared that it would retain jurisdiction over this matter for the purpose of monitoring compliance with the Court's order and for purposes of modifying the relief granted and granting further relief should circumstances so require. On appeal, the defendant argued, and plaintiffs agreed, that the Injunction is lacking in specificity and is overly broad. The matter was remanded to permit this Court to consider its Injunction in light of the views expressed in the majority opinion of the United States Court of Appeals for the Tenth Circuit. *Board of Regents v. National Collegiate Athletic Association,* 707 F.2d 1147 (10th Cir.1983) stay granted 463 U.S. 1311, 104 S.Ct. 1, 77 L.Ed.2d 1294. Following the remand, the defendant filed a motion to modify the Judgment and filed a brief in support of the motion with the attached affidavit of David E. Cawood, the Assistant Executive Director-Communications of the National Collegiate Athletic Association attesting to NCAA activities following the United States Supreme Court's affirmance of this Court's decision. *National Collegiate Athletic Association v. Board of Regents of the University of Oklahoma,* 468 U.S. ——, 104 S.Ct. 2948, 82 L.Ed.2d 70 (1984). Plaintiffs filed a response to defendant's motion and in their brief also made reference to the activities of defendant following the affirmance of this Court by both the Tenth Circuit Court of Appeals and by the United States Supreme Court. On September 28, 1984, defendant withdrew its original motion to modify the Judgment filed on July 3, 1984, and made an amended motion to modify the Judgment in the following manner:

a. To delete from ¶ 2 the reference to violations of §§ 1 and 2 of the Sherman Antitrust Act.

b. To amend ¶ 3 to delete the final phrase "of similar kind or nature in the

future" and substitute therefor the phrase "under which the NCAA maintains exclusive control of the rights of its members to televise their football games."

c.  To add a new paragraph (7) reading as follows:

(7) Nothing herein contained shall be construed as prohibiting the National Collegiate Athletic Association, its officers, agents and employees, from

(a) restricting televising of its members' football games on Friday evenings,

(b) imposing sanctions restricting televising of a members' football games for violation of non-television rules and regulations,

(c) arranging for, selling or participating in the sale of the television rights to its own championship games in which member institutions participate,

(d) making a properly drawn system of pass-over payments, or

(e) commonly regulating the rights of its members to televise their football games so long as the NCAA does not maintain exclusive control of such rights.

Oral arguments were heard by the Court on October 11, 1984, and the matter is now before the Court for a decision.

As stated by the Court at the hearing on October 11, 1984, in its initial opinion, the Court acknowledged that the Injunction as issued could well lead to circumstances which could not at that time be foreseen. It is for this precise reason that the Court retained continuing jurisdiction in this matter. And it was surely not the Court's intention to have its Injunction intrude into areas or activities which were not presented in the original litigation. For example, there was nothing in the record to warrant the Court's prohibiting the NCAA from imposing television sanctions on schools that violate regulations unrelated to the television plan. Nor was it the Court's intention to preclude the NCAA from pro-

hibiting games on Friday nights. The Court echoes the observation of the Tenth Circuit Court of Appeals that neither of these effects is warranted by the violations found in the original cause of action.

At the hearing on defendant's motion on October 11, 1984, the Court informed the parties that, in its view, it was inappropriate to consider additional evidence in complying with the mandate of the Court of Appeals; that, therefore, the Court would not consider additional evidence sought to be presented by both parties regarding what has occurred since the Court entered its Declaratory Judgment and Permanent Injunction on September 15, 1982. And, although the Court will adhere to this original pronouncement, the Court deems it appropriate to make some additional observations regarding these activities since it affords the Court an insight to what may be future conduct of the NCAA.

The Court is concerned by the lengths to which the NCAA has apparently gone in its zeal to impress upon its membership that somehow the NCAA prevailed in this action. Indeed, in reviewing defendant's counsel's explanation to the NCAA membership of the effect of the appellate court decisions, this Court wondered whether the membership was being given a report of a case different from the one this Court heard. The Court makes this observation because it is consistent with the concern it expressed in its original Memorandum Opinion. There, the Court expressed its reservations regarding the insistence of the NCAA that it would cease all illegal conduct and that it would voluntarily abandon its antitrust activities. The Court also declared that it needed to act because the Court had little faith that the NCAA could be expected to conform its conduct to the law in the absence of an Order. The course of conduct which the NCAA apparently still seems intent on pursuing bears witness to the seemliness of those reservations. It also now appears from the material submitted by defendant in support of its original motion that efforts were undertaken which, at least at first blush, would suggest a persistence on the part of the

NCAA to restrict output and stifle competition. Again, I cannot recount all the subtle ways which the NCAA may still pursue in attempts to restrict output of football television and otherwise seek to reimpose the very activity this Court, as well as the appellate courts, have found to be illegal. I say this in order to forcefully impress upon the parties that the Court found illegal conduct on the part of the NCAA; that this same or similar conduct, however veiled, will not be condoned by this Court.

This having been said, the Court will now address the defendant's amended motion to modify the Court's Judgment.

■ First, the Court will not amend ¶ 2 of the Permanent Injunction. While I can understand the concern of the NCAA in the reference to its having violated §§ 1 and 2 of the Sherman Antitrust Act, that remains the law of the case, notwithstanding the appellate courts' having refrained from reviewing this Court's conclusions of law relative to § 2 violations.

The Court will not amend ¶ 3 as requested by the NCAA. It is clear to me, and it should be clear to everyone, that the NCAA is enjoined from similar activities which were found to be illegal by this Court, the Tenth Circuit Court of Appeals and the United States Supreme Court. Also, this particular paragraph must be read with ¶ 1 of the Judgment which states that the right to telecast football games is the property of the institutions and that that right may be sold or assigned by those institutions to any entity at their discretion. Indeed, if there is any institution that wishes to assign this important property right to any entity, including the NCAA, it is that institution's right to do so under whatever terms it deems appropriate. But under no circumstances may such an assignment be brought about by the coercive measures which have previously been detailed by this Court. And the Court should add something further. The Tenth Circuit Court of Appeals made the observation that while the NCAA could not lawfully maintain exclusive control of football rights, the question of how far the rights could be commonly regulated remained open. This is as it should be. Moreover, there was no evidence before this Court regarding a "voluntary" relinquishment of football television rights by the member institutions to the NCAA. To again repeat a word which this Court used throughout the original opinion, the NCAA previously had "commandeered" the property rights of the institutions. And this Court is not prepared today, on the present record, to fashion a scheme under which the Court would impose upon any institution the obligation to share its property rights with any entity and particularly the NCAA. Again, what the Court is attempting to do is to prohibit illegal activity by the NCAA within the broad context of the original Memorandum Opinion issued in this matter.

■ The Court will partially grant defendant's motion to add a new paragraph 7. This paragraph will read as follows:

(7) Nothing herein contained shall be construed as prohibiting the National Collegiate Athletic Association, its officers, agents and employees, from

(a) Restricting televising of its members' football games on Friday evenings,

(b) Imposing sanctions restricting televising of a member's football games for violation of non-television rules and regulations,

(c) Arranging for selling or participating in the sale of the television rights of its own championship games in which its member institutions participate.

The Court finds it essential to insure that the Judgment does not intrude into areas not contemplated, nor into areas upon which the Court did not receive evidence. It should also be noted that the parties have already stipulated to the entry of an Order allowing the participation of the NCAA in the sale of its own television rights for its own championship games.

It appears from the opinion of the Court of Appeals that the NCAA made some argument regarding arrangements "such as a membership-wide contract with opt-out and pass-over payments provisions." These terms are totally foreign to this Court. I also might add, no evidence on

such arrangements was presented to this Court. It would therefore be improper for this Court to amend its Injunction to pass on some type of activity about which this Court has no knowledge and upon which no evidence was presented.

The Court has already expressed its hope that an open and competitive market will find its permanent place in the field of college football. But the Court cannot divine what arrangements will achieve these desirable ends. It must be left to the experts and, indeed, to the institutions themselves, to determine what will ultimately serve their best interests and, most importantly, the interests of the viewers of college football television.

In closing, I believe that the Court has complied with the mandate of the Tenth Circuit Court of Appeals. But so that I will not be misunderstood, I am confined in amending the Permanent Injunction by the evidence originally presented to the Court. It would serve no purpose to repeat the egregious conduct which the Court found to exist. And by my Permanent Injunction, I did not seek to prohibit the NCAA from openly and competitively participating in the college television market. What the Court does prohibit is the illegal activity pursued by the NCAA and the illegal manner in which it pursued its own interests.

I will express another hope. I sincerely hope that the NCAA, through its officers and officials and *good* counsel, accurately perceive what the Court already has said in a lengthy opinion. For I am left with the clear impression that at least up to the hearing of October 11, 1984, it was the intent of the NCAA to test this Court's resolve. The Court has stated what it hopes to achieve in this litigation. It will be accomplished by voluntary compliance or otherwise. I assume the defendant is well aware of the resources available to this Court to achieve its stated purpose should the defendant seek to avoid compliance with this Court's Injunction.

* THIS DOCUMENT RELATES TO: 83–3255, 83–3308, 83–3318, 83–3319, 83–3320, 83–3432 and 83–3581.